LITTLE
. ROCK,
Jan'y 1839

LOGAN
vs.
MOULDER.

ROBERT A. LOGAN *against* LEWIS MOULDER.

ERROR *to* Pope Circuit Court.

Where a defendant at the return term craved oyer and demurred, and after de-
murrer sustained, filed his plea, to which a demurrer was sustained, and a
writ of enquiry thereupon awarded; an entry of default made at the next
term is idle and nugatory.

The evidence of a Lovely claim is the certificate of the Register and Re-
ceiver, usually endorsed on the back of the proof, showing that the condi-
tions of the act of May 24, 1828, and the stipulations of the treaty of May
23, 1828, have been complied with. When the settler is able to adduce this
certificate, his right of entry is complete.

The old covenants of warranty inserted in ancient deeds, and the action upon
them have long since become obsolete in England, and never had a legal
existence under our form of government.

The covenants of seisin, of right to convey, and against incumbrances, are
personal covenants, not running with the land, nor passing to the assignee:
They are mere *choses in action*, not assignable at common law.

The covenants of warranty, and for quiet enjoyment, are in the nature of re-
al covenants, and run with the land.

When the grantor of a Lovely claim covenants that he has a good and valid
claim, or full power and lawful authority to convey, he will be compelled to
produce the evidence of his title, whenever it is legally demanded.

In such case, if the vendee suspect the title to be defective, he is not bound to
wait till he is legally evicted, but may commence suit at any time, and
maintain his action, unless the vendor show that he has performed the con-
dition of his bond.

Where the plaintiff declares, therefore, on a covenant of seisin, or of good
right, full power and lawful authority to convey, it is unnecessary to allege
an eviction; for the covenant is broken, if at all, at the very moment it is
made.

All covenants, not prospective, and that do not pass with the land, are strictly
personal, and if there is no right or authority in the person making them,
they are broken as soon as made.

But in order to charge a party on a covenant of warranty, or for quiet enjoy-
ment, eviction must be alleged.

Where the breach in the declaration is that the defendant had no title to the
claim he conveyed, and the plea answers thereto, that he " had *some* title;"
the plea is no answer, and a demurrer to it is properly sustained.

The ultimate extent of the vendor's responsibility, under any and all of the
usual covenants in a deed, is the purchase money, with interest, and the
covenant or deed is evidence of that purchase money.

An instruction, therefore, that the measure of damages was the value of a
Lovely claim at the date of the covenant, is erroneous.

This was an action of covenant commenced by *Moulder* in the court
below, to September, A. D. 1831, upon an instrument of writing un-
der seal, by which *Logan* conveyed to *Moulder* a claim to three hun-
dred and twenty acres of land, commonly called a Lovely claim, of
one Peter Mercer, and bound himself in the following words: "And

the said *Logan* hereby warrants and defends said claim to be good agreeably to said act of Congress; and the said *Logan* further binds himself to make such other and further proofs as may be necessary to establish the aforesaid claim." The breach assigned was that the defendant had made no such other and further proof as were necessary to establish the claim; that said claim was not a good and *bona fide* one; that the defendant had no title to said claim, and had furnished no proof necessary to establish its validity.

At the return term the defendant below craved oyer of the writing declared on, and filed his general demurrer to the declaration, which was overruled; and he thereupon filed his plea in bar, in which he alleged that the "said claim of the said *Mercer* is and was a good claim, as covenanted by the defendant, and that the same was and has been proven up according to law, and all the necessary proof has been made, so far as the officers of the land office at Batesville required; and that there never has been any notice or demand given to or made on this defendant of any other or further proof being necessary to establish said claim; and that the said defendant had, at the time of making said covenant, some title and claim to the said settlement right of him the said *Mercer*."

To this plea the plaintiff demurred, and the order thereupon is as follows: "Whereupon, after hearing argument of counsel the court sustained the said demurrer. It is, therefore, considered by the court, that the said plaintiff have, and recover from the defendant the costs by him about demurrer expended, and a writ of enquiry awarded, returnable at the next term of this court." No further order was made at that term.

At the next term the defendant was defaulted, and interlocutory judgment entered against him, and the damages assessed immediately by jury, for which damages so assessed, judgment was rendered at that term. The defendant appeared before the jury in mitigation of damages, and offered to refer to all the stipulations, conditions, and covenants, contained in the writing declared to show that the plaintiff was entitled to small or nominal damages. This the court refused to permit, and instructed the jury that they had only to find the value of a Lovely claim, at the time the covenant was executed.

CUMMINS and PIKE, for the plaintiff in error:
The plaintiff in error contends that the demurrer to his plea was im-

properly sustained. The plea is a full answer to the whole breach, and every part of it. It alleges the claim was a good one, as covenanted by him—that it had been proven up according to law, and all the necessary proof made so far as required by the land officers—and further, that he had, when he made the covenant, some title and claim to the said settlement right.

It may be here observed, that although one good breach is sufficient, and, therefore, there being one such in the declaration, to wit, that the claim was not a good and *bona fide* claim, the demurrer to the declaration was rightly overruled; yet, if there are several bad breaches and one good one, and the plea answers only the good breach, it will be adjudged sufficient. In this case the plea, although perhaps defective in point of form, and containing superfluous averments, answers the only good breach, and is sufficient. The breach that *Logan* had made no other or further proof is bad, because it is not averred that such other or further proof had become necessary, without which there was no breach of the covenant. The plea, however, goes on to aver that all the proof which was necessary had been made, and that the land officers required no more. The averment in the breach, that *Logan* had no title to the claim, is insufficient. An eviction by better title is necessary even in chancery, to constitute a breach of warranty of title. *Greenby et al* v. *Willcox*, 2 *J. R.* 1.

If the allegation in the plea that he had " some title " is not a sufficient answer, where such answer is necessary; yet as it was unnecessary, the plea was notwithstanding good. A bad breach need not be noticed in the plea. *Wait* v. *Maxwell*, 4 *Pick.* 88.

But there is a still more fatal error, and that is, that no judgment being rendered at the return term, except simply for costs upon the demurrer, and the defendant still having the right to plead over, a writ of enquiry was awarded; and at the *next* term an interlocutory judgment was rendered by default, the damages assessed by a jury at the same term, and final judgment rendered therefor. By the law of the land, then, and still in force, it is provided—that " *all* writs of enquiry *shall* be executed at *the next succeeding term* after an interlocutory judgment is given." *Dig.* p. 322. The assessment of the damages in this case was, therefore, in direct violation of law, and void, and the judgment based thereon invalid.

The plaintiff in error also contends that the court below erred in directing the jury that the measure of damages was the value of a

LITTLE
ROCK,
Jan'y 1839

LOGAN
vs.
MOULDER.

Lovely claim at the time of executing the covenant; and submits that the true measure of damages was the consideration mentioned in the covenant, and interest thereon, unless there was something in the covenant itself to qualify it—(no other evidence being produced)—and that, therefore, his counsel were entitled to comment upon, and offer to the jury for their consideration in making up their verdict, the whole covenant, and all its various stipulations and conditions, inasmuch as the verdict might have been materially affected thereby.

The measure of damages in an action for breach of covenant of quiet enjoyment, and eviction, is the value of the land at the time of the sale; and the price agreed on by the parties is considered conclusive evidence of such value. *Kinney* v. *Watts,* 14 *Wend.* 41; 2 *Wend.* 405; *Staats* v. *Ten Eyck's Extrs,* 3 *Caines* 311; *Pitcher* v. *Livingston,* 4 *J. R.* 1; *Morris* v. *Phelps,* 5 *J. R.* 49; 5 *J. R.* 35; *Waldo* v. *Lacy,* 7 *J. R.* 173; *Caulkins* v. *Harris,* 9 *J. R.* 324; *Bennett* v. *Jenkins,* 13 *J. R.* 50; *Marston* v. *Hobbs,* 2 *Mass.* 433; *Bickford* v. *Page,* 2 *Mass.* 455; *Bender* v. *Fromberger,* 4 *Dallas,* 441; *Duvall* v. *Craig,* 2 *Wheat,* 62 *n. c.*; *Letcher et al* v. *Woodson,* 1 *Brock.* 212; *Shepherd et al* v. *Hampton,* 4 *Cond. R.* 233; *Hopkins* v. *Lee,* 6 *Cond. R.* 23.

In an action on covenants of *seisin* and *good right to convey,* the damages are the *consideration money and interest.* See cases above— and *Caswell* v. *Wendell,* 4 *Mass.* 103; *Sumner* v. *Williams,* 8 *Mass.* 162; *Nichols* v. *Walter,* 8 *Mass.* 243; *Harris* v. *Newell,* 8 *Mass.* 262; *Leland* v. *Stone,* 10 *Mass.* 459; *Gore* v. *Braizier,* 3 *Mass.* 523.

On covenants for warranty and quiet enjoyment, the value of damages is the same. See as above—and also in Virginia, *Lowther* v. *Commonwealth,* 1 *Hen. & Mun.* 202; *Nelson* v. *Matthews,* 2 *Hen. & Mun.* 164; *Bigelow* v. *Jones,* 4 *Mass.* 512:—So in *South Carolina,* *Liber* v. *Parsons,* 1 *Bay* 19; *Guerard* v. *Rivers,* 1 *Bay* 265—and in Connecticut, *Horsford* v. *Wright, Kirby* 3—and New Jersey, *Hulse* v. *White,* 1 *Coxe,* 173—So in Indiana, *Lindley* v. *Lukin,* 1 *Blackf.* 266; *Blackwell* v. *Board of Justices, &c.* 2 *Blackf.* 142—And in Kentucky, *Harland* v. *Eastland, Hardin,* 590; *Cox* v. *Strode,* 2 *Bibb* 273; *Cosby* v. *West,* 2 *Bibb,* 563; *Booker* v. *Bell,* 3 *Bibb,* 173; *Davis* v. *Hall,* 2 *Bibb,* 590. And the rule is the same on covenents to convey, as on covenants of seisin, where there is an inability to convey, not arising from fraud in the vendor. The rule of damages is in such case invariably the purchase money and interest. *Rutledge* v. *Lawrence,* 1 *Marsh.* 396; *Rankin* v. *Maxwell,* 2 *Marsh.* 488.

LITTLE
ROCK,
Jan'y 1839

LOGAN
vs.
MOULDER.

FOWLER, *contra:*

The defendant, in error, contends that the plea of the said *Logan* was wholly insufficient in law, and no answer to the averments contained in the declaration; and consequently the demurrer to the said plea was properly sustained. Said plea is bad for duplicity, setting up several defences:—each subject matter of defence should have been set out in a separate plea; unless said *Logan* had pleaded general performance of all the covenants, which is not pretended in said plea.— Some of the distinct parts of said plea contain matter, which would throw the burden of the proof upon the plaintiff below, by a conclusion to the country, whilst other parts thereof must necessarily conclude with a verification, and place the *onus probandi* on the said *Logan;* consequently such matter could not properly be included in the same plea —the different parts being wholly repugnant to each other. Said plea also wholly fails, in form and substance, to respond to the declaration; using terms which are not used, either in the covenant or declaration: and failing to use others, to which it was absolutely essential to respond.

The judgment for costs against *Logan*, upon the demurrer to this plea, and an award of a writ of enquiry to next term, is substantially good, and sufficient to justify the assessment of damages at the subsequent term. It is not contended that the interlocutory judgment at the return term is technically in form; but under the statute it is sufficient. *No judgment* shall be abated, arrested, quashed, or *reversed, for any defect or want of form.* See *Pope, Steele, McCampbell, Dig.* p. 322, sec. 25. There is sufficient on the record to show that a judgment upon the demurrer was given, and a writ of enquiry awarded, which is substantially sufficient; and such judgment was properly rendered, as a matter of course, against the said *Logan*, unless he had asked leave to plead over. If he has failed to ask such leave, it was his own *laches*, of which he cannot be permitted to take advantage in this court. The assessment of damages, therefore, at the subsequent term, under said judgment on demurrer and award of a writ of enquiry, was strictly legal. And this position, it is contended, cannot be shaken by the fact on the record, that a judgment by default was entered at said subsequent term; which is but surplusage, and can in no wise affect the case. After an appearance by *Logan*, a judgment by *default* could not be rendered; and there appearing one proper interlocutory judgment on the record, rendered at the return term,

LITTLE
ROCK,
Jan'y 1839

LOGAN
vs.
MOULDER.
on said demurrer, this court will construe the record that the one properly rendered shall stand, and the one improperly entered and not material to the case shall be excluded as surplusage. The assessment of damages, then, was made at the next term after the awarding of the writ of enquiry, as the Statute directs.

The defendant in error also contends that the instruction given by the said Circuit Court to the jury, was in accordance with law, and that the value of a Lovely claim as specified in said covenant, was the true measure of damages, under the state of the evidence presented by the Bill of Exceptions.

LACY, *Judge*, delivered the opinion of the court:

This is an action of covenant founded on a writing under seal, by which *Logan* binds himself to convey to *Moulder*, the Lovely claim of one Peter Mercer, to three hundred and twenty acres of land, and warrants the same to be a good claim agreeably to the act of congress, and to make such other and further proof as may be found necessary to establish its validity. The breaches assigned negative the general terms of the covenant; and allege, that the covenantor did not make any other and further proof to establish the claim, that the claim is not a good and valid claim, and that at the time of executing the deed the defendant had no title to said claim.

At the return term of the writ, the defendant in the court below, appeared and craved oyer of the writing sued on, and filed a general demurrer to the declaration, to which there was a joinder, and judgment was thereon given against the demurrer. He then put in a plea of performance, averring that no other or further proof was necessary to establish the claim, that the claim was a good and valid claim, and that he had some title to the settlement right of him, the said Mercer.

To this plea there was a demurrer, joinder, and judgment against the sufficiency of the plea; and a writ of enquiry was thereupon awarded to the next succeeding term. At the return term of the writ, the entry is, that the defendant made default, and a jury was then called to execute the writ of enquiry; who assessed damages for the breach of the condition of the covenant against the defendant, and final judgment was thereon rendered. At the trial of the cause, the court instructed the jury that the measure of damages was the value of a Lovely claim at the time of executing the covenant, and refused to permit the attorney for the defendant to read its conditions as evidence in mitigation of damages.

LITTLE
ROCK;
Jan'y 1839

LOGAN
vs.
MOULDER,

To the opinion of the court a bill of exceptions was filed, and made part of the record, and the case is now brought up to this court, by a writ of error to reverse the judgment below.

The assignment of errors presents the following questions for our examination and decision, *First*, are the proceedings in the cause, in awarding and executing the writ of enquiry, illegal? *Secondly*, is there a good cause of action laid in the declaration, and are the breaches well assigned, or in other words, is the defendant's plea a sufficient answer to, or denial of the allegations charged? *Thirdly*, what is the true rule or measure of damages for a breach of covenant of seisin, warranty, or to convey a good and valid title. The first question presents no difficulty, and may be briefly disposed of. The writ was awarded and executed in strict conformity with our statute on the subject, the entry that the defendant made default at the return term of the writ, was wholly idle and nugatory, for the record shows that before that time, he had appeared and pleaded to the action; and such an entry being an improper and illegal one, surely cannot be permitted to set aside and annul both an interlocutory and final judgment properly rendered, and regularly entered up in the cause. See *Dig.*, *p*, 322.

Before the court proceeds further in their investigation, it is necessary to define what is meant by the term *Lovely claim*. It is a donation made by the general government, of two quarter-sections of the public lands, according to the legal subdivisions of the public surveys, to a particular class of persons, who are embraced by the act of congress of the 24th of May, 1828, and who have complied with the conditions therein imposed, and also with the stipulations of the treaty ratified between the United States and the Cherokee Nation of Indians, on the 28th of May, 1828. See 2d vol. *Laws of the U. States relating to the public lands*, *p*. 233, *sec*. 8-9.; and *Indian Treaties*, *No.* 97, *p*. 52. The evidence of the claim, is the certificate of the register and receiver of the land office usually endorsed on the back of the proof taken before them, showing that the conditions of the act, and the stipulations of the treaty have been complied with. Whenever the settler is able to adduce the certificate of title, his right of entry, which in the first instance was inchoate, then becomes complete, and he is fully authorized to make a location or entry of the land claimed according to the provision of the law under which his interest accrues; and the government on the presentation of the certificate of the register of the land office to the secretary of the treasury, is bound to issue to him or his

heirs a patent or grant for the land. The covenant declared on, warrants and defends such a claim to be a good and valid claim, agreeably to the act of congress, and purports to convey a good and lawful title under it. The declaration is not accurately or formally drawn, but is believed, however, to be substantially correct, if it contains a good cause of action. As there was a demurrer to the plea, if the declaration is defective, or the breach is not properly assigned, the court will go back to it, and give judgement against him who committed the first fault in the pleadings. This brings us to the consideration of the nature of the covenant sued on and the conditions it contains. It is a deed of bargain and sale to convey a Lovely claim, with a warranty of title. The breaches assigned negative the general words of the covenant; but the cause of action, if there be any, arises from the allegation, that at the time the defendant executed the covenant, he had no good or valid title to the claim in controversy. It is contended by the plaintiff in error, that this is an action founded on a warranty of title, and that no recovery can be had, because the declaration no where alleges an eviction. The old covenant of warranty usually inserted in ancient deeds, and the action upon them have long since become obsolete in England, and it is believed, they never had any legal existence under our form of government; they were real covenants running with the land, whereby the grantor of an estate in freehold warranted the title, and he and his heirs upon voucher, or judgment rendered against him in a writ *warrantia chartae*, were bound to give other lands to the value of those from which there had been eviction by a paramount title; the heir of the warrantor was liable only on the condition that he had other land of equal value cast on him by descent.

The introduction of personal covenants into modern deeds, has long since superseded this mode of conveyance, and the usual covenants in such case are: "*First*, that the grantor is lawfully seized; *Second*, that he has a good right to convey; *Third*, that the land is free from incumbrance; *Fourth*, that the grantee shall quietly enjoy; *Fifth*, that the grantor will warrant and defend the title against all lawful claims."

The covenants of seizin, and of right to convey, and against incumbrances are personal covenants, not running with the land, nor passing to the assignee, but are declared to be mere *choses in action*, not assignable at common law. The covenants of warranty, and of quiet enjoyment, are in the nature of a real covenant, and run with the land, and descend to the heirs, and are made transferable to the assignee.

In the present case the cause of action does not result from the cov-
enant of warranty, nor on the defendant's failure to make other and
further proof to establish the validity of the claim; for the plea fully
answers both of these allegations; but it accrues on the substantial
averment, that at the time of executing the deed, Logan had no right
nor title to the donation claim of Peter Mercer.

LITTLE
ROCK,
Jan'y 1839

LOGAN
vs.
MOULDER.

What is the obligation imposed by the assignment of such breach?
Must the vender allege an eviction to sustain his action, or if he avers
that the vendor never had any title to convey, is the allegation of an
eviction dispensed with? When was the covenant broken, or at what
time did the cause of action accrue? This question is readily answered
by attending to the nature of the pleadings in the cause, and the legal
presumptions they raise.

The grantor is certainly bound by the deed. In that he has asserted
he has a good and valid claim, or full power and lawful authority to
convey, and consequently he has voluntarily taken upon himself the
burden of proof, and as it was more properly in his own knowledge,
what estate he had granted, than that of the grantee, who is presumed
to be a stranger to it, the court will compel him to produce the evi-
dence of his title, whenever it is legally demanded; so that they may
see whether at the time he executed the covenant, he had a good
and valid claim, or full power and lawful authority to convey; the
vendee is supposed to rely on the vendor's deed, and if he suspect the
title to be defective, he is not bound to wait until he is lawfully evicted,
but may commence suit at any time, and maintain his action unless the
vendor show he has performed the condition of his bond. What is that
condition? "The vendor has covenanted he had a good right and law-
ful authority to convey, which is equivalent to a covenant of seizin; and
that being the case, the law will not permit him to shift the responsi-
bility from his own shoulders on to those of the vendee." It is imma-
terial in whom the title is vested; the grantor has declared that it vests
in him, and he is bound by his deed and the legal presumption arising
from it, to show what title he possessed, when his grantee questions it
in a court of justice. His authority to execute the covenant is derived
from the legal interest he had in the claim, and where there is no right
or title there can be no authority to sell. It is, therefore, unnecessary
for a plaintiff in declaring on a covenant of seizin, where a defend-
ant binds himself that he has good right, full power, or lawful authority
to grant, to allege an eviction, in order to maintain the action, for

11

LITTLE ROCK, Jan'y 1839

LOGAN vs. MOULDER.

the covenant is broken if at all, at the very moment it is executed, and a right of action accrues instantly upon the breach of it. All covenants that are not prospective, and that do not pass with the land, are strictly personal covenants, and if there is no right or authority in the party executing them, they are declared to be broken so soon as made; and may be sued on at any time, and a recovery had without alleging an eviction, or an interruption in the title. The leading case on this subject is that of *Bradshaw*, 9 *Co. Rep.* 60; where the true rule was laid down by all the judges, which has been followed up ever since. In the case of *Muscot* vs. *Ballet, Cro. Jac.*, 369; and *Glinister* vs. *Audley, Sir T. Raym.* 14; the question was again brought under discussion, and the decision in *Bradshaw's* case fully sustained. The doctrine settled by those authorities has been repeatedly approved in many recent cases by the court of king's bench, and it has been expressly recognized and reasserted by most, if not all of the American decisions on the subject, 2 *Saund.* 181, *n. b.*; 8 *East.* 80; 8 *T. R.* 459; *Bac. Ab. Cov.* 15; *Pullin* vs. *Nicholas*, 1 *Lev.* 83; *Cro. Eliz.* 749, 916; *Greenby* vs. *Willcocks*, 2 *J. R.* 1; *Hamilton* vs. *Wilson*, 4 *J. R.* 72; *Abbott* vs. *Allen*, 14 *J. R.* 248; *Com. Dig. Pleader C.* 45, 49; *Marston* vs. *Hobbs*, 2 *Mass.* 433; 2 *Root's Rep.* 4; *Sug. on Vend.* 415; *Morris* vs. *Phelps*, 5 *J. R.* 49; *Delavergne* vs. *Norris*, 7 *J. R.* 348; *S. P. Stanard* vs. *Eldridge*, 16 *J. R.* 254. The rule is different in covenants that run with the land; at common law upon voucher, or upon the writ of warrantia chartæ, the demandant recovered of the warrantor to have other land of equal value with the lands of which feoffee is evicted; and when personal covenants were introduced as a substitute for the remedy on the vouchers and warrantia, the established measure of damages was not at all varied or affected. In order to charge a party on a covenant of warranty, an eviction must be alleged by a paramount legal title, and so on a covenant for quiet enjoyment, for in both of these cases there is no breach of the condition, unless an eviction be had, for it is that which constitutes the breach, and gives a good cause of action; 2 *Saund.* 178, *a. n.* 9, 181 *a. n.* 10; *Dudley* vs. *Folleatt*, 3 *T. R.* 584; *Johnson* vs. *Smith*, 1 *H. Blackstone*, 34; *Greenby* vs. *Wilcocks*, 2 *J. R.* 1; 3 *Marsh.* 324; *Marston* vs. *Hobbs*, 2 *Mass.* 439; 2 *Kent*, 475. This principle may be considered conclusively settled; that in all personal covenants, where the grantor has no right or title to convey, the breach of the covenant happens, if at all, at the very moment of time the deed is executed; and in declaring on such a covenant, the

plaintiff need not aver an eviction, but the burden of proof is with the <span>LITTLE ROCK,</span> defendant, and it devolves on him to show what interest he had in the <span>Jan'y 1839</span> estate or chattels, in order that the court may judge what authority <span>LOGAN</span> he had to make the grant or agreement. This being the case, it ne- <span>vs.</span> <span>MOULDER.</span> cessarily follows, that the declaration in the present case, sets out a good cause of action, and that the breaches are there properly assigned. It has already been observed that the plea answers fully every part of the declaration except the averment, the defendant had no title to the Lovely claim of Peter Mercer. In regard to that breach, which constitutes the real cause of action, it wholly avoids the issue; and hence as the breath is well assigned, the plea must of course, be defective. The allegation is, that the defendant in the court below has no right nor title to the claim he conveyed. The plea avers that "he had some title to the said settlement right of the said Mercer." What kind of interest or title had he to the claim as set forth in his plea? Was it an estate for life or for years, or was he seized of an indefeasible estate of inheritance in fee. It certainly cannot be pretended that the words "some title," mean any one or all of these estates. If they mean any thing, it is, that the defendant had no title at all, and his plea negatively establishes the charge made in the declaration, which is, that at the time the defendant executed the covenant sued on, he had no right, title or interest in the Lovely claim of Peter Mercer. The court, therefore, rightfully sustained the demurrer to the plea.

The only remaining question to be decided is, what constitutes the true value or measure of damages in actions for a breach of personal covenant where there is no fraud alleged. This question can scarcely any longer be regarded as open for investigation; the adjudications on the subject have been so frequent and conclusive upon the point, that nothing can be said in support of the justice or policy of the rule.

It may now be asserted that the ultimate extent of the vendor's responsibility, under all and any of the usual covenants in his deed, is the purchase money with interest. This is believed to be the general rule throughout the United States, and is particularly applicable to the condition and situation of our country; Staats vs. Ex't'rs of Ten. Eyck Caines 112; Pitcher vs. Livingston, 4 Johnson R. 1; Caswell vs. Wendall, 4 Mass. R. 108; 4 Dallas, 441; Marston vs. Hobbs, 2 Mass. Rep. 434, 455; Dowsale vs. Crains, 2 Wheaton, 62, n. c.; Letcher & Arnold vs. Woodson, 1 Brock., 212; Shepherd & Others vs.

LITTLE
ROCK,
Jan'y 1839

LOGAN
*vs:*
MOULDER.

*Hampton,* 4 *Cond. Rep.,* 233; *Hopkins* vs. *Lee,* 6 *Cond. Rep.,* 23; *Sumner* vs. *Williams,* 8 *Mass. Rep.* 162; *Nichols* vs. *Walter,* 8 *Mass. Rep.* 243;

The consideration money and interest is the compensation in damages that the vendee is entitled to recover, and the covenant, or deed, is evidence of that value. " The interest is given to countervail the mense profits that the grantor is liable for, and is, or ought to be commensurate in point of time, with the legal claim of the mense profits." The consideration money is the amount agreed on by the parties themselves. What is it that the vendee has parted with, or the vendor received? Merely the purchase money with interest; certainly then, the vendor should not be liable where there is no intention or evidence of fraud, to a greater extent than his vendee has been injured; and that is the consideration money and interest. To establish any other principle would be to commit, in most cases, great and palpable injustice, and in many, certain and speedy ruin. In the instructions given by the circuit court to the jury on that point, the principle here laid down as to the measure of damages was clearly departed from, and of course, that decision is manifestly erroneous.

The instructions are, that the value of a Lovely claim at the date of the execution of the covenant, and not the consideration money and interest was the correct measure of damages. The judgment of the court below must therefore be reversed with costs, and the cause remanded to be proceeded in agreeably to the opinion here expressed.