No. 24,155.

C. B. D. COLVER, *Appellant,* v. EUGENE McINTURFF and LUCY Mc-
INTURFF, *Appellees.*

SYLLABUS BY THE COURT.

1. WARRANTY DEED—*Grantor Without Title or Possession—No Possession by Grantee—Covenants of Warranty.* Where one who has neither title nor possession of land executes a general warranty deed to one who does not obtain possession, no right to recover damages for the breach of the covenant of warranty passes by the execution of a quitclaim deed to the land by the grantee. Whether or not a warranty deed would effect an assignment of such right, the grantee in the last of a series of conveyances cannot assert such a right against the original grantor where one of the intervening deeds is a quitclaim.

2. SAME—*Statute Adopted from Another State—Construction Placed Thereon by Such Other State.* Where one state adopts the statute of another and later repeals it, and still later reënacts it, the readoption does not imply the acceptance of the construction placed upon it by the court of last resort of the state from which it was originally taken, during the interval between its repeal and its second enactment.

3. SAME—*Adverse Possession—Conveyance of Grantor's Interest.* The purpose of the provision of the statute that "any person claiming title to real estate may, notwithstanding there may be an adverse possession thereof, sell and convey his interest therein, in the same manner and with like effect as if he was in the actual possession thereof" is to abrogate the common-law rule that the conveyance of lands held adversely is unlawful, from its tendency to stir up litigation. It does not render covenants of warranty in a deed by one having neither title nor possession, to one receiving no possession, available to the holder of a subsequent quitclaim from the grantee.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed January 6, 1923. Affirmed.

*W. E. Broadie,* and *A. L. Moffat,* both of Kinsley, for the appellant.

*F. P. Hettinger,* and *James Hettinger,* both of Hutchinson, for the appellees.

The opinion of the court was delivered by

MASON, J.: This is an action brought by C. B. D. Colver, to whom a warranty deed in the usual form had been executed, against Eugene McInturff and his wife, who were the grantors in the first of a series of conveyances (two of which were quitclaims) which ended in the warranty deed to the plaintiff, for a breach of the covenants of the deed executed by the defendants. Judgment was rendered for the defendants and the plaintiff appeals.

Colver v. McInturff.

1. The question involved is whether the plaintiff was entitled to the benefits of the covenants relied upon. The doubt on that subject arises from the fact that the defendants at no time had any title to the land described in the deeds and neither the defendants, the plaintiff, nor any of the intervening grantors ever had possession of it. The defendants' claim of title was under a sheriff's deed based upon a mortgage-foreclosure judgment which was utterly void for want of service upon the owner of the fee. At the time the deed by the defendants was made the land was in the open and exclusive possession of the owner, who has continued in its occupancy ever since. The plaintiff brought an action against him to recover it and was defeated on the ground of having no title.

The greater number of state courts which have passed directly upon the matter hold that covenants of warranty and seizin in a deed by a grantor who has neither title nor possession to a grantee who does not obtain possession do not run with the land. A less number hold that the majority doctrine is merely a specific application of the more general rule that a covenant after its breach becomes a mere personal claim and does not run with the land, and that this rule is based solely upon the nonassignability of a chose in action at common law and therefore should not be followed in jurisdictions where such assignments are permitted. The decisions upon the point are collected in notes in 14 L. R. A., n. s., 514 and L. R. A. 1916 D, 613. Later cases bearing on the matter are: *Eli v. Trent,* 241 S. W. (Ky.) 324; *Merchants Natl. Bank v. Otero,* 24 N. M. 598; *Beecher v. Tinnin,* 26 N. M. 59; *Gulf Coal & Coke Co. v. Musgrove,* 195 Ala. 219.

A detailed discussion of a question upon which so much has been written seems unnecessary. Our view is that the covenants of a deed which is made by a grantor who has neither title nor possession to a grantee who obtains no possession do not run with the land and do not upon that principle pass with succeeding conveyances; and this not merely because the covenants are broken as soon as the deed is made, resulting in the accrual of a personal cause of action, but also because inasmuch as the grantor gives no right to the land and the grantee takes none, no interest in it is passed and there is nothing to which the covenants can attach and the transfer of which they can follow. They cannot run with the realty because they have not become attached to it. In the situation stated, if the grantee should die intestate his heirs would take nothing. They

would take no realty, for their ancestor had none; and they would not take the right of action on the broken covenants, for that would pass to the administrator.

Whether in the situation stated the right to recover damages for the breach of covenants would pass by the grantee's execution of a deed, by virtue of its provisions other than those essential to the passing of such title to the realty as he had, is a different question and one the answer to which depends upon the contents of the deed. Obviously, there might be inserted in a deed an express assignment of that right, which would be effective. There is good ground for the argument that one who, having received a deed with the usual covenants, but having neither title nor possession, executes to another a like document, intends thereby to transfer by assignment all rights acquired under the deed to him, including that of recovering damages for the breach of covenants. But he who executes a mere quitclaim, which involves no assertion of title on his part and does not purport to pass any, and in which he undertakes no responsibility, cannot in our judgment be regarded as intending to transfer anything more than such interest in the property as he may have, and such covenants as in strictness run with the land—he gives only such rights as his heir would receive should he die intestate, which in this case would be nothing.

We do not find this distinction between a deed of general warranty and a quitclaim to have been the basis of a decision upon the question whether a right of action was assigned, but in discussions of the subject suggestions are made as to the matter depending on the language of the deed, and in most of the cases where such right is held to have passed although the covenant had already been broken, the conveyance has been one with warranties. It is not necessary now to decide whether or not a warranty deed should be deemed to operate as an assignment of a claim for damages for a broken covenant, but we hold that a mere quitclaim does not do it.

2. The plaintiff contends that whatever effect the want of possession by the grantor in a warranty deed might otherwise have upon the question whether its convenants run with the land is removed by the statute reading: "Any person claiming title to real estate may, notwithstanding there may be an adverse possession thereof, sell and convey his interest therein, in the same manner and with like effect as if he was in the actual possession thereof." (Gen. Stat. 1915, § 2055.) He asserts that such is the purpose of the stat-

Colver v. McInturff.

ute, that it has been so interpreted by the supreme court of Missouri in *Vancourt v. Moore,* 26 Mo. 92, 96, decided in 1857, and that that interpretation is binding upon this court. It is true that the statutes of Missouri contain a section in the language quoted antedating the creation of the territory of Kansas, and the section was enacted by our legislature in 1868. But it was first adopted by Kansas in 1855, in the course of the assimilation of practically the entire statutory law of Missouri. (Gen. Stat. 1855, ch. 26, § 4.) In 1859 the whole act of which it was a part was repealed and a new one substituted which contained a section reading: "Adverse possession of real property does not prevent any person from selling his interest in the same." (Laws 1859, ch. 30, § 5.) In 1868 the original act was re-adopted with some changes, none of which affected this section. (Gen. Stat. 1868, ch. 22, § 6.) An interpretation placed upon the statute by the court of last resort of Missouri in the interval between the repeal and reënactment of the section in question is not binding on this court. The second enactment was an adoption rather of the earlier Kansas law than of the Missouri statute with such construction as had in the meantime been placed upon it. A Missouri decision, to fall within the principle invoked, should have been rendered before 1855.

3. Moreover, the Missouri decision did not amount to a definite interpretation of the statute. In the course of the opinion of one of the judges, it was said:

"The fourth section of the act concerning conveyances empowers any person claiming title to any real estate, notwithstanding there may be an adverse possession thereof, to sell and convey his interest therein in the same manner and with the like effect as if he was in the actual possession. It is conceived that this provision does away with that rule of the common law which required a grantor of land to be seized thereof, when he makes his deed of conveyance, in order that his covenant of warranty may attach to and run with the land. This section was introduced to enable persons having claims to land without possession, or even in case of adverse possession, to alien such lands as though they were seized thereof." (p. 96.)

The section was referred to in *Allen v. Kennedy,* 91 Mo. 324, 330, "as having some bearing on the question" of covenants running with the land, and portions of the opinion in that case containing such reference were quoted in *Coleman v. Lucksinger,* 224 Mo. 1, 16, 27. These utterances, while tending in that direction, fall short of a definite determination that the statute has the effect claimed by the plaintiff.

In our judgment the sole purpose of the provision that a claimant may convey whatever interest he has in land, notwithstanding an adverse occupancy is to abrogate the common-law rule that the conveyance of land held adversely is unlawful, being in effect champertous from its tendency to stir up litigation. (11 C. J. 254, 256; 5 R. C. L. 280; *Richards v. Thompson*, 43 Kan. 209, 23 Pac. 106).

The judgment is affirmed.

---

### OPINION DENYING A REHEARING.

(Filed Feb. 19, 1923.)

The opinion of the court was delivered by

MASON, J.: In a motion for a rehearing the plaintiff in support of his contention that the interpretation of a Kansas statute (Gen. Stat. 1915, § 2055) adopted from Missouri in 1855, repealed in 1859, and reënacted in 1868, is controlled by a Missouri decision rendered in 1857, invokes the rule that "A statute literally or substantially reënacting a prior statute after its words have received a judicial interpretation must be regarded as adopted with knowledge of such construction and with the intention that it should thereafter be interpreted in the same way." (Black's Law of Judicial Precedents, § 75.) The same principle has been thus expressed: "It is a settled rule of statutory construction that when a statute or a clause or provision thereof has been construed by the court of last resort of a state, and the same is substantially reënacted, the legislature adopts such construction, unless the contrary is clearly shown by the language of the act, or the rules of statutory construction have been changed." (25 R. C. L. 1075.) In each case the obvious meaning is that where a court of last resort interprets a statute of its own state which is afterwards reënacted the reënactment is deemed to adopt the construction as well as the language of the former act. If it has ever been held that the legislature in reënacting a statute of its own state is regarded as accepting an interpretation placed upon the same language by the court of the state in which it was first used, in the course of an opinion handed down after it had been copied by the other, such search as we have had opportunity to make has failed to discover it, and the logic of such a decision, if found, would not appeal to us strongly. The texts above quoted appear to recognize the rule we have already applied, that where the legislature in framing a law

uses the language of an act it had formerly repealed it is regarded as adopting its own earlier statute rather than as going back to that of another state where the language had been first used. In interpreting a reënacted territorial statute in accordance with the construction previously given it by the body charged with its administration the federal supreme court has said: "The presumption that the codifiers of 1901 knew and approved the practice of the board certainly is as strong as the presumption that the original enactors of the statute knew a single decision in another state; and it is more important since it refers to a later time." (*Copper Queen Mining Co. v. Arizona Board*, 206 U. S. 474, 479.)

To prevent a possible misapprehension it may be said that in the original opinion we do not assert that none of the warranties of such a deed as that executed to the plaintiff would run with the land if the grantee had received either title or possession under it; nor do we question that a covenant that runs with the land passes by a quitclaim deed.

A statement in the original opinion that the trial court sustained a demurrer to the petition was an inadvertence which has already been corrected and which did not affect the result, the facts stated in the opinion, upon which the decision was based, being included in an agreed statement and not merely pleaded.

The motion for a rehearing is overruled.