JEROME HARDWOOD LUMBER COMPANY v. MUNSELL.

Opinion delivered April 27, 1925.

1. COVENANTS—INCUMBRANCE DEFINED.—An incumbrance, within the usual covenant against incumbrances, is every right to or interest in the land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance.

2. COVENANTS—TIMBER DEED AS INCUMBRANCE.—A timber deed is an incumbrance within the meaning of a covenant against incumbrances, since it diminishes the value of the estate conveyed, though it does not defeat the transfer of the fee to the land.

3. COVENANTS—WARRANTY AGAINST INCUMBRANCE—BREACH.—Where, at the time land was conveyed with covenant against incumbrances, it was either wild and unoccupied or was in the possession of the grantee of a prior timber deed, the covenant was broken when the deed was executed, and did not pass to and cannot be enforced by assignees of the covenant.

Appeal from Drew Circuit Court; *Turner Butler*, Judge; reversed.

*G. E. Snell, J. G. Williamson, Adrian* and *Lamar Williamson*, for appellant.

*Henry & Harris* and *Streett & Burnside*, for appellee.

SMITH, J. Four separate suits were brought by appellees against appellant. The cases were consolidated for trial in the court below, and verdicts were

separately returned in each case for the plaintiff, and from judgment pronounced thereon is this appeal. The cases are substantially identical, and a statement of the facts in one will sufficiently present the issues which we have found to be controlling of them all. The defendant, Jerome Hardwood Lumber Company, is a corporation organized under the laws of this State, and, on the 11th day of December, 1919, became the owner of a large body of land in Chicot and Desha counties, by virtue of a general warranty deed executed to it by the Bliss-Cook Oak Company. Prior to the date of this deed the Bliss-Cook Oak Company had sold and conveyed to the Pioneer Pole & Shaft Company, a corporation under the laws of the State of Ohio, all of the standing hickory timber upon said lands. This timber deed gave the grantee named therein eight years in which to remove said timber, with the right of ingress and egress for that purpose. This deed conveyed the hickory timber on 25,200 acres of land.

This deed to the Pioneer Pole & Shaft Company was not placed of record, but the defendant company was aware of its existence and its provisions. With such knowledge, the defendant company, on the 11th day of December, 1919, sold and conveyed to the Jackson-Vreeland Land Corporation, a corporation under the laws of the State of Missouri, all of the lands which the Bliss-Cook Oak Company had, by deed of the same date, conveyed to the defendant. The consideration for this deed was $15 per acre for the land, one-half of which was paid in cash, and the balance was evidenced by notes secured by a mortgage on the land. This deed was absolute in form, and there was no exception or reservation of the hickory timber, and the deed contained general covenants of warranty reading as follows: "And said Jerome Hardwood Lumber Company hereby covenants with said Jackson-Vreeland Land Corporation, its successors and assigns, that said Jerome Hardwood Lumber Company will forever warrant and defend the title to said lands against all claims and demands whatsoever, except taxes

and assessments on said above described lands for the year 1919, which taxes and assessments for said year said second party assumes and agrees to pay.''

On the 31st day of December, 1919, the Jackson-Vreeland Land Corporation conveyed to the plaintiffs Munsell and Askins four sections and a quarter-section of the land. This conveyance was a warranty deed with the usual covenants of warranty, except as to certain taxes and the mortgage in favor of the Jerome Hardwood Lumber Company, and contained no exception or reservation of the hickory timber.

It was alleged in the complaint, and testimony was offered to show, that, after the execution of this deed, the Pioneer Pole & Shaft Company cut and removed the hickory timber. Plaintiffs have sued the defendant, Jerome Hardwood Lumber Company, for the value of this timber, alleging that the sale of this timber constituted a breach of the covenant of warranty contained in the deed from the defendant, Jerome Hardwood Lumber Company, to the Jackson-Vreeland Land Corporation. The last-named company, which was the plaintiffs' grantor, and which had conveyed to plaintiffs by warranty deed with the usual covenants of warranty, was not made a defendant.

The defendant, Jerome Hardwood Lumber Company, answered and set up a number of defenses, among others that plaintiffs had bought with full knowledge of the outstanding timber deed. This allegation was stricken from the complaint, and testimony offered by defendant to prove that allegation was excluded by the court.

The testimony shows that the Pioneer Pole & Shaft Company began, in 1917, immediately after the receipt of its timber deed from the Bliss-Cook Oak Company, to cut and remove the hickory timber, and three sawmills were set up to saw this timber. The testimony is conflicting as to when the Pioneer Pole & Shaft Company began cutting on plaintiff's land, but the verdict of the jury is conclusive of the fact that this was done after

plaintiffs had obtained their deed from the Jackson-Vreeland Land Corporation.

At all of the times hereinbefore mentioned all of the lands conveyed by defendant to the Jackson-Vreeland Land Corporation were wild cut-over timber lands. None of it was cleared, inclosed or cultivated, and there was no actual possession of any part of the land except that of the Pioneer Pole & Shaft Company.

It is first insisted by the defendant that, if there has been a breach of the covenant of warranty, that breach accrued immediately upon the execution of the deed by defendant and long before the subsequent conveyance from defendant's vendee, Jackson-Vreeland Land Corporation, and that, if any cause of action arose because of a breach of warranty as against the defendant, it arose in and to the Jackson-Vreeland Land Corporation, and did not run with the land in the subsequent conveyances by the Jackson-Vreeland Land Corporation to the plaintiffs in the action.

Inasmuch as we have concluded that the defendant (appellant) is correct in this position, and that this is a complete defense to the suit of the plaintiffs, we do not consider the other questions raised on the appeal.

It may be further said that no contention is made that there is any defect in the title to any of the lands involved in this litigation. Appellees concede that they acquired a perfect title except only to the hickory timber. This failure, they say, is a breach of the covenant of warranty, which runs with the land, and entitles them to maintain this suit on the covenant in the deed from defendant to their grantor.

We have concluded, however, that, under the undisputed testimony, the timber deed to the Pioneer Pole & Shaft Company was an outstanding incumbrance at the time the deed to Jackson-Vreeland Land Corporation was made, and that the covenant sued on was broken when made, and that the right to sue thereon did not run with the land.

It is to be borne in mind that the covenant of warranty alleged to have been broken is the warranty of the title to the hickory timber on the lands.   There is no complaint that there was any failure of title in any other respect.   There was no express warranty of the title to the hickory timber.   There was a mere failure to reserve or to except this timber in the deed from the defendant, which did contain the covenant of warranty set out above.

It will also be borne in mind that the lands were wild and unoccupied, unless, indeed, the Pioneer Pole & Shaft Company had such possession of the land and timber as the timber deed to it from the Bliss-Cook Oak Company contemplated and granted.

It was alleged and was proved by appellees that this timber deed to the Pioneer Pole & Shaft Company was prior in time to the deed to appellees' grantor.   The existence of this timber deed constitutes the breach of the covenant on which plaintiffs predicate their respective causes of action.

We think this timber deed should be regarded as an incumbrance on the land.   Many cases have discussed and defined the word incumbrance.

In Rawle on Covenants for Title (5th ed.), § 75, it is said:   "In considering the question what will cause a breach of the covenant against incumbrances, or, in other words, what is 'an incumbrance' within the true intent and meaning of the covenant, an apparent difficulty will be encountered such as is not presented in the case of the other covenants.   It arises, in part, from the fact that the word 'incumbrance' has no technical meaning.   It was not one of the 'terms of the law,' and no definition of it will be found in the older books.   Within the present century, an incumbrance has been defined to be 'every right to or interest in the land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance.' "

This definition appears to have been extracted from the opinion by Parson, C. J., in *Prescott* v. *Trueman,* 4

Mass. 630, and appears to have been since generally accepted by the courts as a correct definition, and the opinions in many cases have been cited in the excellent brief of respective counsel which have adopted this definition. It has been expressly adopted by this court. *Seldon* v. *Dudley E. Jones Co.,* 74 Ark. 348; *Gibbons* v. *Moore,* 98 Ark. 501.

The timber deed in question is an incumbrance within this definition. It does, and did, diminish the value of the estate conveyed, but it did not operate to defeat the transfer of the fee to the land. Appellees acquired the fee, but they acquired it subject to the right of the Pioneer Pole & Shaft Company to remove the timber.

Standing timber is of course a part of the land, and is an interest which must be conveyed by deed. But in a deed to timber, even where no time for its removal is specified, the timber must be removed within a reasonable time. If the right to cut and remove is not exercised within a reasonable time, it expires because of the failure to exercise the right.

A timber deed, which contemplates the removal of the timber, does not convey an interest in the land which endures indefinitely—no estate is created—only the right of removal is granted; and this is a right which must be exercised within a reasonable time, even though the deed itself imposes no such limitation. *Liston* v. *Chapman & Dewey Land Co.,* 77 Ark. 116.

Numerous cases are cited in the brief of counsel for appellant in which an outstanding timber deed conveying the right to cut and remove timber from land was held to be an incumbrance.

In the case of *Spurr* v. *Andrews,* 6 Allen (Mass.) 420, a grantor had previously conveyed the standing timber, with the privilege of cutting and removing it within six years. In a suit for a breach of the covenant of warranty the Supreme Court of Massachusetts said: ''The covenant under which damages are to be recovered in the present case is that the premises were free from all incumbrances. This covenant would be broken if a third

person had, at the time of the conveyance, a right to or interest in the land granted, which diminished the value of the absolute interest in the same, while it was consistent with the passing of the fee by the deed. *Prescott* v. *Trueman,* 4 Mass. 627. It appears that, at the time of making the conveyance of the land in question, there was a right in one Salmon K. Norton to cut and remove the wood from a portion of it within a certain time. This outstanding interest was not of such character as to defeat the conveyance to the plaintiff, upon the ground that it was made by a party disseised. The plaintiff, by force of his deed, took a seisin of the whole premises, but subject to the outstanding incumbrance in Norton, and with the right to recur to his warrantor for his damages in consequence thereof."

In the case of *Thomas* v. *West & Wheeler, Inc.,* 116 Pac. 1074, a vendor conveyed land with covenants of warranty, though he had already sold the timber to another. The contract whereby the timber was sold was not recorded, and the second grantee recorded his deed first. Later the grantee in the timber deed entered and removed all the timber on the land. It was held by the Supreme Court of Washington that, while the second grantee took priority over the first, and while the act of the first grantee was a trespass, nevertheless, the grantor was liable, for the reason that the covenant of warranty in the deed conveying the land was broken when that deed was delivered. The court said: "It is apparent, we think, that the covenant in the deed was broken at the time the deed was delivered, because the grantor had already sold the timber, and, by the deed to plaintiffs, sold it again, thereby authorized two different vendees to take possession of the property."

See also *Cathcart* v. *Bowman,* 5 Pa. St. 317; *Stambaugh* v. *Smith,* 23 Ohio St. 584; *Brodie* v. *New England Mortgage Security Co.,* 51 Sou. 861, 166 Ala. 170; *Gadow* v. *Hunholz,* 151 N. W. 810, 160 Wis. 293; *Beecher* v. *Tinnin,* 189 Pac. 44; *Colver* v. *McInturff,* 212 Pac. 88.

In the case of *Seldon* v. *Dudley E. Jones Co., supra,* a grantor warranted the title by the statutory warranty implied in the terms "grant, bargain and sell," and, in addition, specifically covenanted to forever warrant and defend the title to the lands conveyed against all claims whatever. In a suit for damages under these covenants it was alleged that there were two outstanding paramount titles to interests in the land which were unknown to the plaintiff when he received his deed from the grantor; first, an unassigned vested dower interest, and, second, an undivided one-sixth interest belonging to the State of Arkansas. After approving the definition of an incumbrance given by Rawle, set out above, as adopted in 2 Warvelle on Vendors, §§ 971, 975, it was said that an outstanding dower interest was an incumbrance within the meaning of the covenant. The court proceeded to say that the general rule is that, to charge a person on a warranty, eviction must be shown, but, where the land is wild and unimproved, actual eviction is not necessary, for the reason that possession follows the legal title, and a paramount title carries possession with it amounting to a constructive eviction.

In the instant case there was either an actual eviction by the possession of the Pioneer Pole & Shaft Company, or, if that company did not have possession, then the lands were wild and unoccupied, and there was a constructive eviction by the paramount title to the timber owned by that company.

As we have said, the title to the land itself is not questioned. The insistence is that the title to the hickory timber failed; that the covenant in the deed from the Jerome Hardwood Lumber Company embraced this timber; and that this covenant ran with the land and inured to the benefit of any subsequent grantee.

But at § 624 of Tiedeman on Real Property (4th ed.) it is said: "If, at the time of the conveyance, the grantor had neither title nor seisin, nothing passes by the deed, and the covenant remains in the grantee, and cannot be enforced by an assignee."

The defendant did not own the hickory timber at the time of the execution and delivery of its deed to the Jackson-Vreeland Land Corporation; therefore its deed did not convey the timber. The land was either wild and unoccupied, or it was in possession of the Pioneer Pole & Shaft Company for the purpose of removing the hickory timber. Defendant had neither title to the timber nor seisin of it when it executed the warranty deed to the Jackson-Vreeland Land Corporation. Its covenant was therefore broken when made, and remained in the Jackson-Vreeland Land Corporation, and did not pass to and cannot be enforced by the plaintiffs.

In the chapter on Covenants in 7 R. C. L., § 16, it is said: "* * * But a covenant of ownership or seisin is a present act, and, if the covenantor hath not title or is not seised, the covenant is broken as soon as made."

At § 47 of the same chapter, after stating that, on the question whether a covenant of seisin is personal or real, there is a decided and irreconcilable conflict of opinion, it is said that "by the great weight of authority in the United States, however, it (covenant of seisin) is a personal covenant, and does not run with the land." A number of annotated cases are cited in support of what is said to be the majority rule, and, among others, the cases of *Logan* v. *Moulder,* 1 Ark. 313, 33 Am. Dec. 338; *Ross* v. *Turner,* 7 Ark. 132, 4 Am. Dec. 531; *Pate* v. *Mitchell,* 23 Ark. 590, 79 Am. Dec. 114.

We have concluded that this timber deed should be regarded as an incumbrance, and that its existence constituted a breach of the covenant of seisin when the covenant was made, for which appellees have no right to sue, and the judgment of the court below will therefore be reversed, and the cause is dismissed. *

HART and HUMPHREYS, JJ., dissent.

---

*Upon a rehearing of this case, Judge Wood disqualified himself, and Hon. E. L. Compere was appointed a special judge. Upon reconsideration of the case the above opinion was approved by a majority of the court. (Rep.)