## S. M.· BARR v.· WILLIAM RANDALL, *et al.*

TAX DEED, *Not Absolutely Void; Statute of Limitations.* Where a person owns a tax-sale certificate and is entitled to have a valid tax deed executed thereon, but such person is at the time the county clerk of the county in which the tax deed is to be executed, and such person as county clerk executes the tax deed to himself as an individual, and the tax deed is immediately recorded, *held,* that it is not absolutely void, and that after the statute of limitations relating to tax deeds has completely run in its favor, it will be valid and not even voidable.

*Error from Marshall District Court.*

EJECTMENT, brought by *Barr* against *Randall* and wife. Trial at the August Term, 1884, and judgment for defendants. The plaintiff brings the case here. The opinion states the facts.

*E. W. Sargent,* for plaintiff in error.

*Doniphan & Reed,* and *A. E. Park,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of ejectment, brought by S. M. Barr against William Randall and Elizabeth Randall his wife, to recover certain real estate situated in Marshall county. The action was tried before the court without a jury, and the court, after making certain findings of fact and conclusions of law, rendered judgment in favor of the defendants and against the plaintiff for costs. The plaintiff brings the case to this court for review.

It appears that one James C. Smith held the original patent title to the land in controversy, and that the plaintiff claims under a quitclaim deed from him. The defendants claim through intermediate conveyances under a tax deed executed by· the county clerk of Marshall county to Russell S. Newell. It appears that on May 6, 1862, the taxes against the land in controversy for the year 1861 were still due and unpaid; that on that day the land was sold for such taxes to Marshall

county, and on the same day the county treasurer assigned the tax-sale certificate to Russell S. Newell. Newell at the time was county clerk of Marshall county, but under the laws as they then existed the county clerk had nothing to do with the tax sale, or the tax-sale certificate, or the assignment of the tax-sale certificate. All these things were then embraced within the duties of the county treasurer. Newell afterward paid the taxes for the years 1862 and 1863, and on May 13, 1864, by the authority vested in him as the county clerk of Marshall county, and in pursuance of said tax sale and the assignment of the tax-sale certificate and the payment of the taxes for the years 1861, 1862 and 1863, executed to himself, as an individual, the tax deed in controversy. In other words, the grantor in the tax deed appears to be Russell S. Newell, the county clerk of Marshall county, and the grantee appears to be Russell S. Newell; and the parol evidence introduced on the trial shows that the two are one and the same person. On May 14, 1864, this tax deed was duly recorded in the office of the register of deeds of Marshall county. On July 17, 1875, Newell by a quitclaim deed conveyed the land in controversy to I. C. Legere; on June 5, 1876, Legere by a quitclaim deed conveyed the same to Mary A. Watkinson; on March 21, 1881, Mary A. Watkinson by a quitclaim deed conveyed the land to the defendant, William Randall, and Randall immediately took possession of the land, and has continued in the possession thereof ever since, and has made lasting and valuable improvements thereon; and he and his grantors have paid all the taxes assessed against the land from the year 1861 up to the present time. On January 25, 1884, the plaintiff Barr commenced this action to eject the defendant Randall and his wife from the premises.

The only question involved in the case is, whether the aforesaid tax deed is absolutely void, or not; and the principal objection urged against its validity is that it was executed by Russell S. Newell, as county clerk, to himself, as an individual. The sale seems to have been regular and valid in every particular. The purchase of the tax-sale certificate by Newell

from the county treasurer seems also to have been regular and valid; but concerning this matter we shall have more to say hereafter. So also does the assignment of the tax-sale certificate seem to have been regular and valid; and at the time when all these proceedings were had, the county treasurer, under the statutes, had the right to sell and assign the tax-sale certificate to any person who desired to purchase, without any aid or assistance from the county clerk or consultation with him. Hence, at the time when the tax deed was executed, Russell S. Newell, as an individual, had an unquestionable right to the tax-sale certificate, and an unquestionable right to have a valid tax deed executed thereon to himself; and if he had resigned his office of county clerk and another person had been appointed to take his place, he could have compelled such other person by a writ of mandamus to execute to him a valid tax deed.

There is another supposed irregularity, as follows: It is probable that Newell paid the entire purchase-money for the tax-sale certificate in county scrip, and not in cash or in the various warrants on the treasuries of the state, cities, townships, school districts, etc., to which the various items of the consideration for the tax-sale certificate belonged. This may not be the case, however, for presumptively the officers did their duty. Presumptively also, from the *prima facie* character of the tax deed in whose favor the statute of limitations has long since completely run, everything except the fact that Newell appears to be both the grantor and grantee in the tax deed, was regular and valid. Also, upon the face of all the tax proceedings prior to the tax deed, everything seems to have been regular and valid. *But Newell, who was a witness on the trial for the plaintiff, testified in terms that he paid for the tax-sale certificate in question in county scrip.* Now it was unquestionably proper for him to pay a portion of the consideration for the tax-sale certificate in county scrip, and possibly all, under the statutes as they then existed. Indeed, it would be difficult to give a good reason why all might not have been thus paid under the statutes as they then existed; but supposing,

for the purposes of this case, that such a payment was not proper, still such payment did no harm to the original owner of the land or to any grantee of his, or to any person claiming under him. Under the decisions of this court, made in an early day under the statutes as they then existed, the original owner or his grantee had the same. right to redeem the land from the taxes and the right *to use the same kind of funds* in doing so, after the assignment of the tax-sale certificate as before. ( *Judd v. Driver,* 1 Kas. 455, 464, 465 ; *Guittard Twp. v. Comm'rs of Marshall Co.,* 4 id. 388, 397. See also Comp. Laws of 1862, ch. 198, § 8, *proviso.*) And further, neither the original owner nor his grantee in the present case has ever attempted to redeem the land from the taxes, but totally abandoned the land from the year 1861 up to 1884, when this action was commenced, a period of nearly twenty-four years. Hence this irregularity of paying the entire consideration for the tax-sale certificate in county scrip, if it can be called an irregularity, is of such small dimensions, and of such inconsiderable consequence, that we shall hereafter entirely ignore it and exclude it from all further consideration.

The only irregularity, then, of any considerable consequence, is the one, that the person who executed the tax deed as an officer and as grantor was also the individual person to whom the tax deed was executed as grantee. We shall assume that the fact that the grantor and the grantee mentioned in the tax deed were one and the same person, acting and receiving merely in different capacities and in different relations, would render the tax deed voidable; and that any person having an interest in avoiding the tax deed might do so at any time before the statute of limitations had completely run in its favor. But the question then arises: Is the tax deed so absolutely void that no statute of limitations can make it good? The tax deed in the present case was on record nearly twenty years before this or any other action was commenced to defeat or avoid the same, and before this or any other action was commenced which could have the effect of defeating or avoiding the same. We hardly think that the tax deed in this case ever was more

9 — 35 KAS.

Tax deed not ab-
solutely void;
statute of limi-
tations, a bar.
than voidable; and we are also inclined to think that the statute of limitations has so completely run in its favor that all action having for its object the defeat or avoidance of the tax deed is now completely barred. The tax sale was itself unquestionably valid; the transfer of the tax-sale certificate, notwithstanding the aforesaid slight irregularity, was also unquestionably valid, and Newell, as before stated, had an absolute right to a tax deed; and no one but himself as county clerk could execute the same; and there is no statute which in terms prohibits him from executing the same, or which prohibits any county clerk from executing a valid tax deed to himself. We shall assume, however, upon general principles, that such a tax deed would be voidable so long as no statute of limitations had completely run in its favor; but is such tax deed absolutely void? Possibly it would have been better for Newell to have resigned his office of county clerk and allowed his successor in office to execute the tax deed to him; or perhaps it would have been better still for him to have held his tax-sale certificate until his term of office had expired, and then to have allowed his successor to execute the tax deed. But he chose to execute the tax deed himself, and in doing so he did not act in his own individual capacity, but acted in the capacity of county clerk, in the capacity of agent for the county or for the public, and possibly, also, as agent for the original owner; and if his action is wrong or unjustifiable, it would seem that he could be called to an account only by his principal, and within reasonable time, and not by some other person or persons, and after he had been favored by the complete running of a statute of limitations. Generally, where an agent sells the property of his principal to himself, no one but his principal can complain; and his principal may ratify and confirm the sale, and make it absolutely good. (*Eastern Bank v. Taylor*, 41 Ala. 93; *Leach v. Fowler*, 22 Ark. 143; *Ellis v. Peck*, 45 Iowa, 112; Wharton on Agency, § 235.) Wherever an agent, in acting for his principal, also deals with himself, the principal may ratify and confirm such dealings and make them good; and in all cases

such dealings will be held to be valid unless the principal chooses to hold them invalid. Such dealings are not void, but only voidable at the option of the principal. (See authorities above cited and hereafter cited.) If they were absolutely void, then any person under any circumstances and in any case could treat them as void, which we suppose would be carrying the doctrine of invalidity for irregularities further than any person would desire. Now the county clerk was the agent of the public, and executed the tax deed as the agent of the public, and under an express statutory authority, and whether he was also the agent of the original owner, or not, can make no difference. In either case the tax deed would not be absolutely void, but at most only voidable. If we should assume, however, that a county clerk, when executing a tax deed, is not only the agent for the public, but is also the agent for the original owner of the land, still we would think that the original owner in the present case would not have much to complain of. The original owner in the present case, including his grantee, had failed to pay his taxes and his land had been sold therefor, and a tax deed was due thereon, and Newell, as county clerk, was the only person who could execute it; and Newell, as an individual, was the only person who was entitled to receive it; and there is nothing in the statutes that would prevent Newell, as county clerk, from executing the tax deed to Newell, as an individual. And whether a valid tax deed were executed to Newell or to some one else, or by Newell or by some one else, could not make the slightest difference to the original owner, or to anyone holding under him. This objection to the tax deed is purely technical, and yet it is not founded upon any inflexible rule or mandate of written law, but only upon some supposed general principles of unwritten law.

Besides, the original owner, and his grantee, the present plaintiff, abandoned the land for about twenty-four years, and allowed the defendant, Randall, and his grantors, to pay all the taxes thereon, and to make lasting and valuable improvements thereon. No fraud is shown in the present case, nor the slightest unfairness. Everything seems to have been fairly

done, and in good faith, and in accordance with the letter of the statute, except as we have heretofore stated, and the worst that can be urged against the tax deed is the peculiar mode in which it was executed. . Hence, we would think that the tax deed ought to be held valid, after the statute of limitations has completely run in its favor. By abandoning the land for so great a time, and allowing the statute of limitations to run in favor of the tax deed, the plaintiff and his grantor have ratified, confirmed, and made good the irregular execution of the tax deed. ( *Pierce v. Benjamin,* 31 Mass. 356 ; *Bassett v. Brown,* 105 id. 551 ; *Greenwood v. Spring,* 54 Barb. 375 ; *Marsh v. Whitmore,* 88 U. S. 178.) And, indeed, every other supposed irregularity or illegality has been cured. by the running of the statute of limitations. In this state, the statute of limitations relating to tax deeds purports by its terms to apply to all tax deeds, whether good or bad, or void or voidable, " except in cases *where the taxes have been paid or the land redeemed* as provided by law." ( Gen. Stat. 1868, ch. 107, § 116 ; Comp. Laws of 1879, ch. 107, § 141.) Now the plaintiff in this case does not claim that he or his grantor ever paid the taxes on the land, or ever offered to pay them, or ever redeemed the land from the taxes, or ever offered to redeem the same. He merely sets up supposed irregularities to defeat the tax deed.

We would also refer to the following cases, not as being entirely applicable to this case, but as furnishing some support to the views we have herein expressed : *Cuttle v. Brockway,* 24 Pa. St. 145 ; *Russell v. Reed,* 27 id. 166 ; *Cuttle v. Brockway,* 32 id. 45 ; *Chorpenning's Appeal,* 32 id. 315 ; *Ellis v. Peck,* 45 Iowa, 112 ; *Morton v. Waring,* 18 B. Mon. 72, 84, *et seq.*

There are some other objections urged against the tax deed, but we do not think that any of them are tenable. We might, however, in conclusion, say that even if it were true in the present case that the tax-sale certificate which was made by the county treasurer in 1862 was so made for an amount which did not include the county treasurer's own fees, but was sufficient in every other respect, the fact that the amount did not include the county treasurer's own fee would not render the

tax deed, afterward issued thereon, void. ( *Case v. Frazier*, 30 Kas. 343.)

The judgment of the court below will be affirmed.

JOHNSTON, J., concurring.

HORTON, C. J.: It appears from the evidence in this case that Russell S. Newell was the clerk of Marshall county from 1862 to 1864; that he had to take his pay for his services in scrip worth from twenty-five to thirty-five cents on the dollar; and that while acting as county clerk he procured assignments of tax-sale certificates to himself under an arrangement with the county treasurer, but did not, as a general thing, pay for the certificates until redemptions were made. When he did pay, the county treasurer accepted county scrip in full payment. When he did not have enough ·of his own scrip to pay for these assignments, he obtained scrip from the county treasurer so to do. In this way, both the county clerk and the treasurer realized dollar for dollar from their scrip. The county treasurer was a merchant, and in addition to receiving county scrip for his services, also received it at a depreciated price in payment of his goods. This collusive arrangement between these officers of course cannot be sustained, and I am very clearly of the opinion, that any person having an interest therein could have set aside the alleged assignments of the tax-sale certificates made in pursuance of the foregoing arrangements; and I am further of the opinion, that, in this case, any person having an interest in avoiding the tax deed in controversy might have done so, at any time before the statute of limitations had fully run in its favor; but it does not appear that James C. Smith, the patentee of the land in controversy, or anyone for him or holding under him, ever offered to redeem the land from the sale of taxes before the issuance of the tax deed, or before the statute of limitations had completely run in its favor. Indeed, it appears from the facts that the original owner abandoned the land for a very great length of time, and the holder of the tax deed and his grantees have paid all the taxes from 1861 to the present time, and have

also made lasting and valuable improvements thereon.    This action was not commenced until January 25, 1884, nearly twenty years after the tax deed was recorded; therefore, I think that after the statute of limitations has fully run, considering all of the circumstances of this case, it is too late now to say the tax sale is absolutely void upon its face.

In the case of *Cole v. Moore*, 34 Ark. 382, to which we are referred by counsel for plaintiff in error, where the purchase at a tax sale by a county clerk was held illegal, the tax sale was made on August 2, 1869; the action to set aside the certificate of purchase was brought April 19, 1870, less than one year.    No question of the statute of limitations running in favor of any deed or tax certificate was in issue, argued, or discussed.