A. A. RICHARDS v. WM. THOMPSON, *as Executor of the Estate of Kate Patterson, deceased, et al.*

1. MAINTENANCE *and Champerty, Neither Shown.* Certain real estate was occupied by persons whose title was defective, and R., an attorney at law, wrote to T., the person holding the paramount title, and then the following correspondence, according to the. testimony of R., ensued: "I had made two propositions to him: that I would carry the suit through the district court and the supreme court for $1,000; or, if he did not want to do that, I would divide the cash proceeds of the litigation. He wrote to me and notified me to bring the suit and he would let me know about the terms afterward." In pursuance of this correspondence, R. commenced the action in the name of T. as plaintiff, signing the petition as follows: "R., attorney for the plaintiff." Afterward, T. sold and conveyed the property to R., and from that time on the action was prosecuted in the name of R. *Held,* That neither maintenance nor champerty on the part of R. is shown.

2. MORTGAGE — *Foreclosure Proceedings, Void against Heir of Mortgagor.* Where the holder of a mortgage, long after the death of the mortgagor, proceeds to foreclose his mortgage, making no person a party to the suit except the holder of the mortgage and the mortgagor, and service of summons is obtained by publication, and the foreclosure proceedings are prosecuted to final determination, and a sheriff's deed is executed and recorded, *held,* that all the foreclosure proceedings, including the sheriff's deed, are void as against the heir of the mortgagor and the grantee of such heir, although no action was instituted questioning the validity of such proceedings or deed for more than five years after the sheriff's deed was executed and recorded.

3. TAX DEED, *Void on Face—Statute of Limitations.* Where a tax deed shows upon its face that it was executed on September 7, 1878, upon a tax sale made on September 7, 1875, *held,* that such tax deed is void upon its face, for the reason that it shows upon its face that it was executed one day too soon; and in such a case the five-years statute of limitations contained in ¿141 of the tax law will not operate in its favor.

*Error from Sumner District Court.*

EJECTMENT.   Trial at the February term, 1887, and judgment for defendants.   The plaintiff *Richards* brings the case here.

14 — 43 KAS.

*Lawrence & Richards,* for plaintiff in error.
*McDonald & Parker,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of eject-ment, brought in the district court of Sumner county on De-cember 18, 1885, in the name of Robert Thompson against Kate Patterson and others, to recover lot 17 in block 59 in the city of Wellington. Afterward, and with the consent of the parties, A. A. Richards was substituted as the plaintiff in the place of Robert Thompson, and Kate Patterson having died the action was revived against Robert Thompson her exe-cutor, and against Margaret J. Thompson and others her de-visees. The case was tried twice before the court without a jury, the second trial being upon the same evidence as was introduced on the first trial, and the court found generally in favor of the defendants and against the plaintiff, and ren-dered judgment accordingly; and the plaintiff, as plaintiff in error, brings the case to this court for review.

The facts of the case are substantially as follows: On De-cember 20, 1873, and prior thereto, Robert H. Thompson owned the land in controversy, and on that day mortgaged it to John G. Tucker to secure the sum of $200, to become due on February 20, 1874. On January 25, 1876, Robert H. Thompson died, at Warner, in the state of New Hampshire, intestate, leaving as his sole heir his father, Robert Thompson. On August 8, 1877, the mortgage debt being overdue, and the mortgagee having no knowledge of the death of Robert H. Thompson, such mortgagee commenced an action in the district court of Sumner county to recover the mortgage debt and to foreclose the mortgage, making Robert H. Thompson and him alone the defendant. Service of summons was ob-tained by publication, and the foreclosure proceedings were carried on to final consummation; and on September 7, 1878, a sheriff's deed was executed under the foreclosure proceed-ings to Christiana Tucker for the property in controversy,

and on the same day this deed was recorded. Also on the same day a tax deed was executed to Christiana Tucker for the same property on a tax sale made on September 7, 1875, for the taxes of 1874. The defendants' title to the property in controversy is founded upon the aforesaid sheriff's deed and tax deed; and the defendants, with their grantors, including Christiana Tucker, have held the possession of the property under such sheriff's deed and tax deed continuously since about the time when such deeds were executed. Sometime in the spring of 1885, A. A. Richards, an attorney at law at Wellington, Kansas, was informed by some person that the title to the property in controversy, as held by Christiana Tucker and her grantees, was not good, and from that time on until about November, 1885, he made extraordinary effort to ascertain who held the adverse, and, as he supposed, the better title; when finally, he ascertained, as he believed, that the adverse and paramount title was in the aforesaid Robert Thompson, of Warner, New Hampshire. After some correspondence between Richards and Thompson, Richards wrote to Thompson, as he states in his testimony, as follows: "I had made two propositions to him: that I would carry the suit through the district court and the supreme court for $1,000; or, if he did not want to do that, I would divide the cash proceeds of the litigation. He wrote to me and notified me to bring the suit and he would let me know about the terms afterward." In pursuance of this correspondence, and on December 18, 1885, Richards brought this action in the name of Thompson as plaintiff, signing the petition as follows: "A. A. Richards, attorney for the plaintiff." On January 7, 1886, Thompson executed a deed for the property to Richards, the consideration therefor being $600. The property was then and is now worth about $10,000. Since the execution of the last-mentioned deed, Richards's name was substituted for that of the original plaintiff, Thompson, and the action has since that time been carried on and conducted in the name of Richards as the plaintiff.

The principal questions urged in this case are with refer-

ence to Richards's supposed maintenance and champerty, and to the validity or invalidity of the aforesaid sheriff's deed and tax deed. Under the evidence in the case we do not think any other question could seriously be presented. Under the evidence the original title, which on December 20, 1873, and prior and subsequent thereto, was in Robert H. Thompson, unquestionably by his death passed to Robert Thompson, and by deed of conveyance passed from Robert Thompson to Richards, unless the sheriff's deed or tax deed has placed the title somewhere else.

As to the question of maintenance or champerty. we hardly think that there is much ground for urging the same. It does 1. Maintenance and champerty, neither shown. not appear from the evidence that any contract was made between Thompson and Richards, except that Richards should commence the action for Thompson. There was no contract made with reference to what Richards's compensation should be. Also, in this state, and under § 6 of the conveyance act, the purchase of the property by Richards from Thompson was not in violation of law. Said § 6 reads as follows:

"SEC. 6. Any person claiming title to real estate may, notwithstanding there may be an adverse possession thereof, sell and convey his interest therein in the same manner and with like effect as if he was in the actual possession thereof."

The objections urged by the plaintiff against the sheriff's deed are as follows: First, all the foreclosure proceedings upon which the sheriff's deed is founded took place long after the death of Robert H. Thompson, the mortgagor, and the only defendant in such foreclosure proceedings. Second, no summons was ever issued or served in the foreclosure proceedings. The service, however, was by publication. Third, there was no foreclosure decree in the foreclosure proceedings. It would seem from the record that this is a mistake. Fourth, the sheriff's deed was executed on September 7, 1878, upon a judgment stated in the sheriff's deed to have been rendered on November 15, 1878. The judgment was in fact rendered on November 15, 1877.

The first objection urged against the sheriff's deed we think is sufficient. In this state a mortgagee has no title or estate in the mortgaged property. The whole title and estate remains in the mortgagor, and the mortgagee obtains nothing but a lien upon the mortgaged property to secure the payment of his debt, and when he forecloses the mortgage, the foreclosure is in the nature of a personal action as against the mortgagor to recover the mortgage debt, with the additional remedy to enforce his mortgage lien. He obtains a personal judgment against the mortgagor for the amount due on the mortgage, with an order that the mortgaged property shall be sold to satisfy the judgment, and that in case the mortgaged property does not satisfy the judgment, then that a general execution may be issued for the remainder. Of course he may make other persons than the mortgagor — persons who are interested in the mortgaged property — parties to the action, but if he does not do so, then the foreclosure proceedings as to such other persons will be .void. In the present foreclosure action Robert Thompson was not a party; but the only parties were the holders of the mortgage as the plaintiffs, and Robert H. Thompson, the mortgagor, as the defendant. Now the

2. Mortgage— foreclosure proceedings, void against heir of mortgagor.

fact that the mortgagor, the only defendant in the action, was dead long before the foreclosure action was commenced, we think rendered the whole of the foreclosure proceedings absolutely null and void. In this connection, see *Green v. McMurty,* 20 Kas. 189. Under the laws of some of the states where the mortgagee has the legal title to the mortgaged property, and where he may take the possession of the mortgaged property after condition broken, and where he may have a strict foreclosure of his mortgage, this might be different. But our laws will not tolerate these things. We think the sheriff's deed is void, and as none of the proceedings upon which the deed is founded were against Robert Thompson, the real owner of the property, we do not think that any statute of limitations has so run as to make the deed good as against him or his grantee, Richards. Indeed all the proceedings anterior

to the sheriff's deed and upon which it is founded, are also void. They never had the slightest validity as against any person.

The tax deed is alleged by the plaintiff to be void for the following reasons: First, the tax deed was executed on September 7, 1878, on a tax sale made September 7, 1875 — one day too soon — and is therefore void. Second, the tax deed shows that the property was sold at the tax sale to Sumner county, and does not show that Sumner county or any officer for it ever assigned the tax-sale certificate. Third, the tax deed shows that the tax-sale certificate was assigned by Whitney R. Tucker, as administrator of the estate of John G. Tucker, to Christiana Tucker, who obtained the tax deed, but does not show that Whitney R. Tucker ever had any power or rightful authority to make such an assignment.

We think the first ground for claiming that the tax deed is void, is sufficient. It has uniformly been held by this court that the original owner of land sold for taxes, or his grantee, must have the full time of three years' time as given to him by statute within which to redeem his land from the taxes, before any tax deed for the land can be legally executed, and that in the computation of the time given him within which to redeem, the day on which the sale was made must be excluded. (*English v. Williamson*, 34 Kas. 212; *Cable v. Coates*, 36 id. 191; *Hill v. Timmermeyer*, 36 id. 252.) And it has uniformly been held that a tax deed void upon its face will not start the statute of limitations to running in its favor. (*Shoat v. Walker*, 6 Kas. 65; *Sapp v. Morrill*, 8 id. 677; *Waterson v. Devoe*, 18 id. 223.) In the present case the tax deed was executed one day too soon. The tax sale was on September 7, 1875. That day, in computing the time within which the owner could redeem, is to be excluded, and the original owner and his grantee had three years after that day within which to redeem, and the tax-purchaser and assignees had to wait three years after that day before they could obtain their tax deed. In other words, the tax deed could not rightfully have been executed prior to September 8, 1878. In the

3. Tax deed, void on face— statute of limitations.

present case the tax deed itself shows upon its face that it was executed one day too soon, and therefore no evidence *aliunde* was or is necessary to show that fact.    Hence upon such fact and the foregoing decisions the tax deed must be held to be void upon its face, and that it has not been cured by the operation of any statute of limitations.    If the tax deed had been valid upon its face and voidable only for some extrinsic matter, not including a want of jurisdiction in the taxing officers or that the taxes had been paid, then the five-years statute of limitations found in § 141 of the tax law would have made the tax deed valid.    But that is not this case.    The following cases are cited by the defendants, where tax deeds have been spoken of as being voidable; and from these cases it is claimed that the tax deed in the present case is only voidable, and that the five-years statute of limitations above mentioned had completely run in its favor before this action was commenced, and had therefore barred any action that could be brought that would have the effect to defeat or avoid the tax deed: *English v. Williamson*, 34 Kas. 213; *Cable v. Coates*, 36 id. 191; *Hill v. Timmermeyer*, 36 id. 252.    In the first and third of these cases the tax deeds were in fact only voidable, for they were not issued until after the three years given for redemption had elapsed, and upon their faces they appeared to be valid, and they were held to be invalid simply because the notices given of the expiration of the time for redemption gave the owner less than three years within which to redeem his property from the taxes.    In the second case, it made no difference whether the deed should be called void, or voidable; for the action to defeat the tax deed in that case was commenced long before any statuté of limitations in favor of the tax deed had completely run.    In that action it was necessary to hold that the tax deed was invalid, and while the court used the word "voidable" in the opinion, the court might, properly, if it had so chosen, have used the word "void."

It is unnecessary to extend this opinion farther.    The judgment of the court below will have to be reversed.    This per-

haps is unfortunate, for possibly it may seem to encourage speculation and speculators in doubtful titles. We would hope not; and it may not, for the case must go back to the district court for a new trial, and in such new trial possibly something may be shown that will enable the defendants to defeat the present action; but if they finally fail in their title, they will still not be entirely without redress.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.