RUTH A. DOUDNA *et al.* v. EMMA J. HARLAN.

1. TAX DEED, *How Overthrown—Statute of Limitations.* A tax deed, valid upon its face, starts the statute of limitations, provided in ¶ 6995 of the General Statutes of 1889, to running when recorded in the proper county, and, after said statute has fully run in its favor, such deed cannot be overthrown by an action begun thereafter, except by showing that the land was not subject to taxation when listed therefor, or that the taxes have been paid, or the land redeemed as provided by law.

2. TAX SALE—*Bidding off by County.* When lands are advertised to be sold for taxes, and at the time of the sale no one bids the amount of

the taxes and costs thereon, and the land is bid off by the county treasurer for the county, *held*, that such "bidding off" constitutes a sale of said land under our statute relating to tax sales.

3. ——— *Redemption by Minors.*  Paragraph 6977, General Statutes of 1889, provides "that lands of minors, or any interest they may have in any land sold for taxes, may be redeemed at any time before such minor becomes of age, and during one year thereafter."  *Held*, That the right of redemption conferred by this paragraph applies only to lands that belong to minors, and lands in which minors have an interest at the time they are sold for taxes.

*Error from Labette District Court.*

THE opinion states the case.

*F. M. Smith*, and *J. H. Crichton*, for plaintiffs in error.

*Case & Glasse*, for defendant in error.

Opinion by STRANG, C.: Action of ejectment for the possession of lots 9, 10, 11, 12, and 13, in block 36, in the city of Chetopa, Labette county, Kansas.   Defendant admits possession in herself, and alleges that she is the owner of the lots in dispute by virtue of a tax deed, and other conveyances. The case was submitted to the court below without a jury upon the following agreed statement of facts, November 2, 1887:

"1. Before the sale in September, 1875, hereinafter mentioned, the title of the property in controversy in this suit was perfect in Willoughby Doudna, the husband of the plaintiff, Ruth A. Doudna, and the father of the other plaintiffs.

"2. Said property was sold for taxes in September, 1875, for the taxes thereon for the year 1874, costs, penalties and expenses, and was by the county treasurer of Labette county at such sale bid off to and for said county.

"3. Said Willoughby Doudna died intestate on November 4, 1878, leaving a widow, said Ruth A. Doudna, and four children, who were then minors; and the younger died in March, 1886.   The other three children are the plaintiff above named, Mrs. Mattie Bennett, now twenty-three years of age, Hosea W. Doudna, now sixteen years old, and Oliver R. Doudna, now fourteen years old.

"4. In the month of July, 1880, Lee Clark purchased and

took an assignment of the tax-sale certificate of said property on said tax sale of September, 1875, and in said month of July procured tax deeds therefor, the records of which, including date of recording, may be used in evidence instead of originals, as hereinafter stipulated, and thereafter he and his wife sold and conveyed said property to one J. L. Van Note, and Van Note and his wife thereafter sold and conveyed said property to said defendant, Emma J. Harlan. The records of these conveyances, including date of recording, may be used in evidence instead of originals.

"5. Defendant, Emma J. Harlan, since the purchase of said property improved same to an extent left for further inquiry and determination, if necessary to an adjustment of the rights of the parties to this suit. She is now in the possession of the property, and has been in possession thereof since this suit.

"6. In October, 1886, said plaintiff paid to the county treasurer of said county for the purpose of redeeming said property, except lot 13, from tax sale of September, 1875, the sum of $114.60, and received from the treasurer of said county the redemption certificate, which is to be introduced in evidence to speak and show for itself, and for all purposes for which it is competent. The payment of said money was for and on behalf of said minors, and the money is still in the hands of the treasurer of said county.

"7. Said property was no part of the homestead of said Willoughby Doudna nor of his family. That exhibit 'A,' hereto attached, contains the levies of the taxes for general county purposes and poor and incidental funds for the year therein described and set forth.

"8. Said lots 9, 10, 11, 12, and 13, and lots 14, 15, and 16, comprise the northwest quarter of said block 36; and in the summer and fall of 1881, said Van Note built a house on lots 15 and 16, and a barn on 12, 13 and 14; and in February, 1882, completed the building of an iron fence in front of all said lots, and part way on east line of said lot 9, and part way on west line of said lot 16, and a wooden fence around balance of said quarter block. This house was burned down in February, 1884."

It was likewise admitted on the trial of the cause, that more than five years had elapsed from the time of the recording of the tax deeds under which the defendant claims and the commencement of this action, and that at the time of the sale of

the property therein described, the plaintiffs had no interest therein other than that Ruth A. Doudna was the wife of Willoughby Doudna, and the other plaintiffs were his children, he then being alive.

EXHIBIT A.— COUNTY TAX LEVIES, IN MILLS.

| Years. | General county fund. | Poor and incidental fund. |
|---|---|---|
| C. 446. 1874 | 10 | 2 |
| D. 2. 1875 | 8 | 4 |
| D. 210. 1876 | 8.5 | 2 |
| D. 376. 1877 | 8.5 | 2 |
| D. 560. 1878 | 10 | 4 |
| F. 100. 1879 | 10 | 2 |

That the assessed valuation of both personal and real property in Labette county, Kansas, from 1874 to 1880, did not exceed $3,000,000. And that the levies made by the county commissioners, as above stated and set forth, were not submitted to a vote of the electors of said county of Labette and state of Kansas, before said levies were made, or at any time.

"No. 1179, 1180, 1181, 1182.          $113.75.
                    "COUNTY TREASURER'S OFFICE.

"STATE OF KANSAS, LABETTE COUNTY, ss.— I, C. W. Littleton, treasurer of Labette county, Kansas, do hereby certify that Mrs. Ruth Ann Doudna, for Hosea Doudna and Oliver Doudna, 'minors,' has this day redeemed the following real estate from the sale of 1875, to wit: Chetopa, lots 9, 10, 11, and 12, block 36. The above-described real estate was sold on the 7th day of September, 1875, to Labette county, and assigned July, 1880, to Lee Clark for the sum of $3.04, being the delinquent tax for the year 1874, by the payment to the said treasurer of the following amounts:

Paid by purchaser at sale ................................:....... $3 04

The following tax indorsed on sale:

1875-6-7-8-9, amount...................................... $5 56
Tax paid by purchaser, 1880................................. 1 12
Tax paid by purchaser, 1881................................. 1 20
Tax paid by purchaser, 1882................................. 2 11
Tax paid by purchaser, 1883................................. 2 12
Tax paid by purchaser, 1884................................. 9 93
Tax paid by purchaser, 1885................................. 10 04
Interest.................................................... 68 83
Costs and certificate of sale ............... ................ 9 80

Total............................................... $113 75

"Deeded July 13, 1880.

"Witness my hand this 18th day of November, 1888.

C. W. Littleton, *Treasurer.*

By H. T. Atwood, *Deputy.*

"*County Fees:*
Treasurer ........ $0 40
County Clerk..... 25"

The court upon said statement of facts found for the defendant, and adjudged that she recover her costs. The plaintiffs objected to the findings of the court, and moved for a new trial, which motion was overruled.

The first contention of the plaintiffs in error is, that the tax deed relied upon by the defendant in error is void, and therefore never operative as a transfer of title. Coupled with this is the further contention that, said deed being void, it never did and could not set the five years' statute of limitations to running, and therefore the trial court should have set aside the tax deed in controversy, and found for the plaintiffs in error. In support of this position, counsel cite the case of *Richards v. Thompson,* 43 Kas. 214. An examination of that case shows that the tax deed involved therein was void on its face. It is well settled that a deed void on its face will not set the statute to running. The defect in the deed in that case is patent. The deed itself, and the record thereof, carry with them the evidence of their invalidity, of which the grantee and those who claim under him must take notice, and the five years' statute of limitations prescribed in ¶ 6977 of the General Statutes of 1889 will not run in favor of such a deed.

But the defect which renders a deed invalid may not appear upon its face. It may be ascertainable only upon an examination of the proceedings antecedent to the issuance of the deed, or the sale. Such a deed carries with it a presumption in favor of the regularity of the conditions precedent thereto. And in such a case, our understanding is, that it is sufficient to set the statute to running in its favor. In this case, it is not insisted that the land was not subject to taxation at the time it was listed. It is admitted that the tax

was not paid before the sale, and that the land was not re-
deemed according to law, before the deed was issued.

But it is claimed that, as the tax upon which it was sold
was in excess of the amount that the commissioners were by
law allowed to levy, they had no power to levy the tax upon
which the sale was had, and that a deed following a sale on a
tax that the commissioners were without jurisdiction to levy
could not start the statute of limitations to running in its favor.
If there were no question of the statute of limitations in-
volved in the case, the showing might be sufficient to avoid
the deed.    But this court has settled the question as presented
here, against the plaintiffs in error, in the case of *Edwards v.
Sims*, 40 Kas. 235.    In that case Mr. Commissioner SIMPSON,
writing the opinion for the court, says:

"We have noticed all the objections urged against the tax
deed, and it not being pretended that the taxes were paid, the
land redeemed, or that it was not subject to taxation at the
time it was listed, it becomes to us a matter of positive duty,
in obedience to the law-making power of the state, to apply
the limitation contained in § 141 of the tax law to the facts as
shown by the record, and the result is, that none of the mat-
ters alleged against the deed can be considered by the court,
because the deed had been recorded for more than five years
before the commencement of this action against the assigns of
the tax purchaser for the recovery of the land, and at that time
the bar of the statute is complete."

In *Jordan v. Kyle*, 27 Kas. 190, it is held that—

"Where the land is taxable, and the taxes have not been
paid, or the land redeemed as provided by law, and the tax
deed is executed by the officer authorized by law, is regular
on its face, contains a perfect description of the land conveyed,
and has been of record more than five years before December
3, 1879, the date of the commencement of the suit against the
tax purchaser, the bar of the statute of limitations fully at-
tached to said tax deed before the action was brought."

In *Maxson v. Huston*, 22 Kas. 643, the court held that—

"A tax deed regular on its face, containing a perfect de-
scription of the land conveyed, and of record the time pre-
scribed by the statute of limitations, is protected by said

statute from impeachment by evidence that the description of the land on the assessment roll, and in the sale certificate, is fatally defective."

In this case Mr. Justice BREWER, in promulgating the opinion of the court, very pertinently says:

"If the proceedings must be so regular as to make a valid sale before the statute of limitations will start to run upon a tax deed good upon its face, then the statute has but little virtue in these cases as a statute of repose; for upon a valid sale, a valid deed can be compelled, and the statute will rarely be invoked except in cases where it is not needed."

See also, as bearing upon this question: *Barr v. Randall*, 35 Kas. 126; *Mack v. Price*, 35 id. 134; *Sanger v. Rice*, 43 id. 580.

We are referred by counsel for plaintiffs to the case of *Kemper v. McClelland*, 19 Ohio, 327. In that case, however, there was no question of the statute of limitations, and we have no doubt that the court properly avoided the tax deed, because of the excess of tax upon which the sale was had. If, however, the deed had been valid upon its face, and the five years' statute had run in that case, as in this, the question would have been analogous to the one in the case before us, and the decision would have been different.

The tax deed under which the defendant claims being valid on its face, and having been of record more than five years before the commencement of this action, and it being

1. Tax deed, not avoided. admitted that the land in controversy was subject to taxation when listed, that the taxes were not paid, and the land not having been redeemed as provided by law, the action to avoid the deed cannot be maintained.

The plaintiffs next complain that "the court erred in finding that the bidding off of the lots in controversy by Labette county was a sale." The contention of the plaintiff is that when the county bids off property at a tax sale, it does not become a purchaser, but simply bids off property and holds it until some one pays the taxes and penalties thereon, and takes an assignment of the bid from the county; and that in such

case there is no sale of the property until it is assigned by the
county to the party paying the county the taxes, penalties, and
costs thereon. We do not think this position is tenable.
There is but one sale mentioned in the statute, and that very
clearly refers to the bidding off of the property at the time
it is advertised to be sold for the taxes. Nor do we think it
any less a sale because it is bid off by the treasurer for the
county, than when bid off by some person for himself, or some
other individual. The "bidding off" of the property by the
treasurer in the name of the county and for the county, has
been constantly treated as a sale by the bench and bar of the
state. If the county is not a purchaser when property is so bid
off, who is the owner in the meantime? The former owner
has lost his title except so far as he has the right of redemp-
tion. No third party has obtained any interest therein as yet,
and there must be some person, natural or artificial, in whom
the ownership of the property rests. Besides, if the county has
obtained no interest in the property bid off, how can it transfer
by assignment any interest therein? We think the county

2. Tax sale—
bidding off
by county.

becomes a purchaser at the tax sale when, in the
absence of other bids equal in amount to the taxes,
penalties and costs against the property, the treas-
urer bids the property off in the name of the county; and
that the redemption period commences to run from the date
thereof. (*Stevens v. Casady*, [Iowa,] 12 N. W. Rep. 803.)

The third complaint is, that the court erred in not permit-
ting the minor plaintiffs to redeem. Paragraph 6977, General
Statutes of 1889, so far as it relates to this question, reads as
follows: "The lands of minors, or any interest they may have
in any lands sold for taxes, may be redeemed at any time be-
fore such minor becomes of age, and during one year there-

3. Redemption
by minors.

after." It will be seen that the lands that may
be redeemed by minors are lands of said minors
sold for taxes, or lands in which minors have some interest
when they are sold for taxes. The lots in controversy in this
case were not the lands of the minor plaintiffs herein when
they were sold, but were the lands of their ancestor, Wil-

loughby Doudna.   Nor did the minor plaintiffs in this case have any interest in the lands in controversy at the time they were sold for taxes.   We do not think it will do to say that the lands sold for taxes in which minors may subsequently obtain an interest may be redeemed by said minors at any time during their minority, and during one year thereafter.   If that were the law, then, by a series of transfers the right of redemption might be prolonged indefinitely.   The ancestor, before the right of redemption expired, could transfer the land to his minor child, who before his right of redemption expired could transfer to a second minor, and so on without end.

The Iowa supreme court has settled the question so far as that state is concerned, and we believe the construction placed upon the Iowa statute by the court of that state, in *Stevens v. Casady,* supra, was in accord with the meaning of both the statute of that state and of our own.   It is recommended that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.