MARY G. GODDARD V. GEORGE STORCH.

No. 8672.

1. COMPILED LAWS, 1862 — *lands entered between March 1 and meeting of county board of equalization, taxable same year.* Under the Compiled Laws of 1862, lands entered in 1863 at the United States Land Office, with military bounty land warrants, at any time prior to the first day's session of the county board of equalization, which was on the third Tuesday of August, were taxable for such year.

2. TAX DEED — *good on face and recorded five years, defects in proceedings anterior to not available against, though land unoccupied.* Defects in tax proceedings anterior to the execution of a tax deed good upon its face, which has been of record five years, cannot, in an action to quiet title brought by the tax-deed claimant, be shown by the defendant thereto for the purpose of basing thereon a claim of recovery, as in ejectment, and for rents and profits.

*Error from Marshall District Court.*
*Hon. R. B. Spilman, Judge.*

AFFIRMED.                    OPINION FILED MARCH 6, 1897.

*W. A. Calderhead* and *E. Hutchinson*, for plaintiff in error.

*J. A. Broughten*, for defendant in error.

DOSTER, C. J.    This controversy relates to the taxability of lands, the validity of tax proceedings, and the effect of recording tax deeds.

The lands were entered with military-bounty land warrants on July 8, 1863, and were charged with taxes for that year.   Payment of the taxes not having been made, the lands were, at the sale of 1864, exposed for sale because thereof.   In 1874 a tax deed based on that sale was executed and recorded.   Under that tax deed, George Storch, the defendant in error, took actual possession of the lands in the fall of 1886 ; and, after remaining in possession for five years, brought suit

against the heirs of the patentee under the land-warrant location to quiet his title. The plaintiff in error, defendant below, alleged title in herself and wrongful possession by Storch; and prayed for recovery of the lands as in ejectment, and for rents and profits during their wrongful occupancy. The court below, upon a hearing of the case, rendered judgment in favor of the plaintiff; from which the defendant prosecutes error.

It is claimed that the lands in controversy were not subject to taxation for the year 1863. The statutes relating to this question are as follows:

"Between the first day of April and the first day of August, in each year, the county assessor, in the several counties of this state shall ascertain by diligent inquiry, the names of all taxable persons in his county, and also all their taxable personal property owned on the first day of April, and all real estate therein, and shall assess and appraise the same as herein provided." § 4, ch. 198, Comp. Laws, 1862, p. 876.

"The county clerk shall deliver to the assessor, on or before the first day of April, in each year, the assessment roll of the preceding year, and the list of taxable lands, and shall take his receipt therefor; and the assessor, as soon as he shall have completed his assessment, and made his assessment roll for the year, shall return the whole of such papers and documents to the clerk." § 6, ch. 198, Comp. Laws, 1862, p. 876.

"In the year 1862, the real property within the state of Kansas, with all improvements thereon, shall be assessed in accordance with the preceding sections of this act, and the act to which this is amendatory; and no further assessment shall be made, until the year 1865, and only once in three years thereafter. But the county assessor shall add to the assessment roll of each year, all lands in their respective counties entered prior to March first of each year, at the United States land office for the district in which his county may lie, and such lands shall be assessed by him to correspond, as nearly as possible, with similar

land in the county, and be taxed the same rates.''
§ 13, ch. 198, Comp. Laws, 1862, p. 880.

''The county board of equalization shall have power
to enter upon the tax-roll any lands which may have
been omitted by the assessor ; provided the same shall
have been entered or pre-empted before the first day
of their session, and give the same a fair and just
valuation.''   § 67, ch. 187, Comp. Laws, 1862, p. 873.

The first three of the above-quoted sections define
the duties of the county clerk in furnishing to the
assessor a list of taxable lands, and also relate to the
duties of the assessor in ascertaining what lands are
taxable, and, in certain instances, adding them to the
assessment rolls, and assessing and appraising the
same as of certain dates.   The section last quoted re-
lates to the duties of the county board of equalization,
and empowers such board to place upon the tax-roll
lands which may have been omitted by the assessor,
provided the same '' shall have been entered or pre-
empted before the first day of their session, and give
the same a fair and just valuation.''   These several
sections of the law harmonize well, and are not diffi-
cult to construe.   Section 13 authorizes the assessor to
1. Lands taxable     add to the assessment roll of each year
   same year.        such lands as may have been entered
prior to the first of March of such year, and section
four requires the assessor to assess and appraise the
same ; whether as of the first of April, or — as might
be thought — between that and the first of August, is
immaterial.   Section 67 requires the county board
to supply the omissions of the assessor, by adding to
the lists for taxation all lands entered or pre-empted
before the first day of their session ; which, by section
25 of. chapter 197, Compiled Laws of 1862 ( p. 863),
was the third Tuesday in August.   That session of
the Board was more than a month after the location

of the land warrants upon the land in question.   The plaintiff in error, however, bases her claim of non-taxability upon the assumption that the word "entered," as used in such section, has no application to land-warrant locations.   This assumption is un-founded.   The word is of generic signification, and includes all methods of acquisition of the equitable title to public lands prior to the passing of the legal title by government patent, except under laws in which words of special signification, such as "pre-empted," are used.   Our attention has not been called to a single case in which such a limited and special meaning as the plaintiff in error attaches to the word has been given.   On the contrary, the officers of the United States Land Department allow it a much more extended meaning than we have done.

"An entry is that act by which an individual ac-quires an inceptive right to a portion of the unappro-priated soil of the country, by filing his claim thereto with the proper land officers of the United States." Secretary Chandler to Commissioner Williamson, Copp's Public Land Laws, 1882, vol. 2, p. 869.

"You hold that the word 'entry' means a pur-chase with money, or a location under or by virtue of some kind of warrant or scrip.   It undoubtedly has the meaning you give it, but I think, as used in said act, it should have a more general meaning, and be construed so as to include any and every lawful ap-propriation of lands.   Lands certified to railroads in accordance with the terms of the grant are thus ap-propriated."   Acting Secretary Gorham to Commis-sioner Williamson, Copp's Public Land Laws, 1882, vol. 2, p. 961.

As an alternative proposition, the plaintiff in error challenged the tax deed because of defects in the tax proceedings prior to its execution, and offered to make

proof of such defects. The purpose in so doing was to establish title in herself, to support the claim of wrongful possession by the tax-deed claimant, and to secure a judgment in ejectment, and for the rents and profits of the lands during the adverse occupancy. None of this offered proof, however, was to the effect that the taxes had been paid or the lands redeemed from sale ; and under the statute in force at the time of the sale, (Comp. Laws, 1862, § 11, p. 879,) and continued down to the present time, such offer was rightly rejected. This, however, upon the assumption that the tax deed was valid upon its face, and had been recorded in 1874, as it appeared to have been. The plaintiff in error has in nowise challenged the regularity of the tax deed, in substance or form ; and assuming, as she appears to concede, that it was good upon its face, it was too late, upon the trial of the case, to reach back of it to the proceedings upon which it was founded, in order to clear them away as obstructions to her affirmative demands.

2. Defects in tax-proceedings not available.

A question is raised whether the plaintiff below had shown five years' actual possession of the land before beginning his suit. The trial court found in his favor as to this, and upon what appears to us full and satisfactory testimony ; but whether such finding was correct is immaterial. The tax deed having been of record five years and more, and being good upon its face, drew upon the land the constructive possession of the tax-deed claimant ; and such constructive possession, not having been interrupted by the actual possession of the adverse claimant, perfected the tax-deed title at the expiration of the statutory period, as against affirmative assaults upon the same, whether

Railroad Co. v. Tindall.

such tax-deed owner had ever been in the actual occupancy of the lands or not. *Doudna et al. v. Harlan,* 45 Kan. 484. For the purposes of the plaintiff's defense to the defendant's counter attack upon him, actual· occupancy was not necessary, however it might be for purposes of ·his own affirmative case.

The judgment of the District Court is affirmed.

All the Justices concurring.